IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No.: 3:11CR128-2–HEH |
| | ) Civil Action No.: 3:13CV277–HEH |
| JOAN MARSH, | ) |
| | ) |
| Petitioner. | ) |

**MEMORANDUM OPINION**
**(Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence)**

Petitioner Joan Marsh ("Marsh"), a federal inmate proceeding *pro se*, was convicted by a jury of this Court on September 21, 2011, of Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349 (Count One); Bank Fraud, in violation of 18 U.S.C. § 1344 (Counts Two through Seven); Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h) (Count Eight); and Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(b)(i) (Counts Nine and Twelve through Fourteen).[1]

On December 19, 2011, Marsh was sentenced to 96 months on each count, to run concurrently, followed by five years of supervised release. Marsh filed a timely notice of appeal to the United States Court of Appeals for the Fourth Circuit. However, on April 19, 2012, the appeal was dismissed on Marsh's motion. Marsh is currently serving her sentence at the Federal Correctional Institution, Danbury, in Danbury, Connecticut.

This case is presently before the Court on Marsh's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion", ECF No. 113), which

---

[1] At the close of the government's case, the Court dismissed Counts Ten and Eleven on the government's motion.

was timely filed. The § 2255 Motion includes a number of exhibits. The United States has filed a memorandum in opposition to the § 2255 Motion, accompanied by an affidavit filed by Marsh's trial counsel, John F. Carman, Esquire, and correspondence relating to plea negotiations in her case.

Although the centerpiece of Marsh's petition is a claim of ineffective assistance of counsel—at all stages of the proceedings—she also challenges the constitutionality of judicial fact-finding in applying certain sentencing enhancements. The undercurrent of her § 2255 Motion, however, is in essence a re-argument of a number of issues rejected by this Court and the jury during the trial of her case.

This Court's analysis begins with recognition of the well-settled principle that unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral review is limited. *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). As Chief Justice Rehnquist noted in *Brecht v. Abrahamson*, "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness. . . . Accordingly, it hardly bears repeating that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." 507 U.S. 619, 633–34 (1993) (internal quotation marks and citations omitted). Therefore, errors of law do not typically provide a basis for habeas relief under 28 U.S.C. § 2255 unless it constitutes "a fundamental defect which inherently results in a complete miscarriage of justice . . . ." *United States v. Timmreck*, 441 U.S. 780, 783 (1979).

Marsh's claim of ineffective assistance of counsel encompasses virtually every stage of the proceedings from indictment through the appellate process. She contends that (1) her trial counsel failed to effectively negotiate a favorable plea agreement with the United States; (2) counsel, at sentencing, failed to object to parts of the Presentence Report and to factual findings supporting sentencing enhancements; and (3) her appellate counsel failed to perfect her appeal. Her § 2255 Motion is sweeping in scope but stands on frail factual footing.

The standard of review for petitions alleging ineffective assistance of counsel is well-established in 28 U.S.C. § 2255 jurisprudence. To prevail, a petitioner must first show that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). As to prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697. To prevail, the petitioner must demonstrate a "reasonable

3

probability of a different outcome." *Lenz v. Washington*, 444 F.3d 295, 303 (4th Cir. 2006) (internal quotation marks and citations omitted). Demonstrating a reasonable probability of a different outcome is an insurmountable hurdle for Marsh in this case.

At trial, Marsh was represented by John F. Carman, Esquire ("Carman"), whom she retained. Carman has practiced law for over twenty years and handled in excess of 400 federal criminal cases. (Gov't Resp. to § 2255 Mot., Ex. 1 at ¶ 1 ("Carman Aff."), ECF No. 115-1.) Although Marsh expresses general discontent with Carman's handling of her case, her principle complaint focuses on plea negotiations.[2]

Although Marsh's claims concerning her counsel's negotiation of a potential plea agreement has several components, at bottom she believes that Carman should have more aggressively pressed the government for a better deal. The strength of her claim is predicated on a belief that the government would have been willing to offer her a more favorable disposition. Unfortunately, she offers no evidence to bolster such speculation.

Marsh maintains that Carman's representation during plea negotiations was deficient in three respects. First, she contends that Carman inaccurately predicted that she had a 70 percent chance of acquittal at trial. (Marsh Mem. Supp. § 2255 Mot. at 11.) Marsh also maintains that Carman anticipated that she would be facing a U.S. Sentencing Guideline range of only 51–72 months of imprisonment if she was convicted at trial.

---

[2] In her § 2255 Motion, Marsh inveighs that Carman failed to properly investigate her case, interview witnesses, file appropriate pre-trial motions, or keep her abreast of case strategy. Marsh fails to particularize her grievances with sufficient specificity to enable the court's review. Moreover, the affidavit filed by her capable trial counsel refutes her contentions. Carman was unable to interview the co-defendants in this case because they were represented by counsel and, after conferring with Marsh, concluded they would not have been favorable to her case. (Carman Aff. ¶ 11.) Carman also determined that there were no meritorious pre-trial motions necessary in her case. (*Id.* at ¶ 12.) And Marsh suggests none.

(*Id.*) The plea agreement offered by the United States in this case required her to enter a plea of guilty to Count One of the Indictment, charging conspiracy to commit bank fraud, and contained no specific sentencing recommendation by the United States. Marsh, however, recalls that Carman explained to her "that the government had offered her a plea offer of 41 months. However, based on the erroneous advice given to her by Carman, she opted to proceed to trial." (*Id.*)

Lastly, she finds fault with her counsel's alleged failure to "attempt to make a better deal with the government and see if they would go below the 41 months." (*Id.*) She asserts that "[h]ad Carman correctly informed Marsh that she was facing a Guideline range of 92–115 months imprisonment as compared to 41 months imprisonment, there is a reasonable probability that Marsh would have taken the government's plea offer. Further, had Carman informed Marsh that the evidence against her was overwhelming and that it was more like 90 percent that she would be convicted, Marsh would have certainly opted to accept the government['s] plea offer." (*Id.* at 12.)

Under the terms of the plea agreement offered to Marsh, she would have been required to plead guilty to Count One of the Indictment, charging conspiracy to commit bank fraud. (Gov't Resp. to § 2255 Mot., Ex. 3 at ¶ 1, ("Draft Plea Agreement").) The balance of the remaining counts would have been dismissed at sentencing and she would not have been charged with any other related conduct. Furthermore, if Marsh received a two point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), the government would move for an additional one level reduction pursuant to U.S.S.G. § 3E1.1(b). In the event that Marsh offered substantial assistance to the prosecution, the

agreement left the door ajar for a further sentencing reduction pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35(b). (Draft Plea Agreement at ¶¶ 9–14.) In addition, in the statement of facts accompanying the plea agreement, the United States stipulated that the loss attributed to Marsh was more than $400,000 and less than $1 million. (Gov't Resp. to § 2255 Mot., Ex. 3 at 7–8 ("Draft Statement of Facts").)

In his affidavit, Carman explains that he reviewed the plea agreement in detail with his client and that, in his view, it would result in a sentencing exposure of approximately 40 months. He also counseled her that if she went to trial, she would likely lose the two point reduction for acceptance of responsibility and that the evidence adduced at trial could result in a higher loss calculation than that stipulated to in the statement of facts. (Carman Aff. ¶¶ 6–7.) Carman denies in his affidavit that he estimated Marsh's chance of acquittal to be about 70 percent. To the contrary, if such prediction had been made, he would have assessed the odds of acquittal at no better than 20 percent. (*Id.* at ¶ 9.)

Carman stridently rejects the contention that he failed to aggressively pursue a more favorable plea agreement. He asserts that he engaged in continuing negotiations with the prosecutor "almost to the point of trial." (*Id.* at ¶ 6.)

In explaining his discussions with Marsh in his affidavit, Carman described Marsh as being primarily concerned with the effect of a felony conviction on her immigration status. (*Id.* at ¶ 5.) According to Carman, Marsh also indicated "that her 'faith' told her going to trial was the right thing to do." (*Id.* at ¶ 10.)

The United States perceptively points out in its responsive pleading that "rendering a qualified prediction about the odds of acquittal at trial is an inexact science." (Gov't Resp. to § 2255 Mot. at 8–9.) Forecasting the sentencing decisions of courts, even in a guideline-driven system, is equally difficult to divine. (*Id.*) The government also stresses that the plea agreement sent to Carman explicitly stated that her maximum statutory exposure on Count One of the Indictment alone was 30 years of incarceration. The proposed agreement contained no specific sentencing recommendation. (Draft Plea Agreement ¶ 1.) The government also notes that the draft agreement warned that the U.S. Sentencing Guidelines were advisory only and that the court could sentence her above the guideline range. (*Id.* at 4.) While acknowledging that inaccurate predictions of the outcome of a case before a jury could rarely constitute ineffective assistance of counsel, misinformation about the law, or its application to specific facts, may warrant such finding. As the United States Supreme Court noted in *Lafler v. Cooper*, "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012). This includes the role of counsel in advising a client about a plea offer. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

In writing for the court in *Lafler*, Justice Kennedy explained what must be demonstrated to show ineffective assistance when a petitioner declines a prosecution's offer based on the inept advice of counsel.

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms and that the

7

conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385.

While this Court is convinced from the record evidence that Carman persisted in his attempt to negotiate a more favorable position, it is concerned about the conflicting versions of the advice that Carman gave Marsh concerning her sentencing guidelines and the likelihood of acquittal at trial. If, in fact, Carman significantly misadvised Marsh as to her sentencing exposure if convicted by a jury, or provided an objectively unreasonable prediction of the likelihood of conviction at trial, Marsh may be entitled to relief *if* it is demonstrated that the outcome of her case would have been different. *See Hill*, 474 U.S. at 60.

Although the weight of Marsh's evidence on this claim is less than compelling,[3] the Court is unable to find conclusively at this juncture that she is entitled to no relief. *See* 28 U.S.C. § 2255(b); *see also Machibroda v. United States*, 368 U.S. 487, 495 n.3 (1962).

Moreover, despite the lack of evidence corroborating the plea discussions with her counsel, Marsh has made a bare, but sufficient, threshold showing to warrant a hearing on this limited issue. *See Merzbacher v. Shearin*, 706 F.3d 356, 366 (4th Cir. 2013). She maintains in her supporting memorandum that she would have accepted the plea offer if

---

[3] Even at this late stage, Marsh tenaciously clings to her assertion of innocence. (Marsh Mem. Supp. § 2255 Motion 14–15.) Since self-serving claims by habeas petitioners that they would have accepted plea offers are typically greeted by courts with heavy skepticism, Marsh's persistent position is an important factor for the Court to consider. *Merzbacher v. Shearin*, 706 F.3d 356, 367 (4th Cir. 2013) (citations omitted).

8

counsel had provided a more accurate prediction of her guidelines and potential of conviction. The sentence she received was considerably greater than the alleged plea offer. Therefore, Marsh has shown the bare minimum to support a finding of prejudice and trigger the necessity for an evidentiary hearing. *See Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 1409 (2012).

The second facet of Marsh's claim of ineffective assistance of counsel pertains to the sentencing process. Marsh initially contends that Carman "failed to challenge the loss amount which increased [her] Guideline level by fourteen (14) levels, her role in the conspiracy, her Criminal History Category or anything else." (Marsh Mem. Supp. § 2255 Mot. at 13.) In his rejoinder, Carman, who represented Marsh at trial, stated, "[s]imply put, the evidence in the trial record amply supported the assessment of a role enhancement, as well as, a loss assessment as recommended by the pre-sentence report." (Carman Aff. ¶ 14.)

Marsh argues that she was unaware of losses incurred as a result of the actions of her co-conspirators. Consequently, Marsh reasons that she should be held accountable only for the actual losses traceable to her. (Marsh Mem. Supp. § 2255 Mot. at 14–15.) The law in the Fourth Circuit is to the contrary. *See United States v. Hughes*, 401 F.3d 540, 556–57 (4th Cir. 2005). Complete knowledge of the scope, membership, or full range of activities is unnecessary for a conspiracy conviction. *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993). A conspirator is responsible for "reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity".

*United States v. Bell*, 667 F.3d 431, 441 (4th Cir. 2011) (quoting U.S.S.G. § 1B1.3(a)(1)(B)).

In this case, the trial evidence clearly supported the probation officer's calculation of the intended loss and the characterization of Marsh's role in the offense. Marsh actively recruited other co-conspirators and supplied them with the bank account numbers necessary to fraudulently access victims' accounts. The Presentence Report, coupled with the evidence introduced at trial, was more than sufficient to enable the court to make a reasonable estimate of the intended loss amount in this case. *United States v. Cloud*, 680 F.3d 396, 409–11 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 218 (2012). As Carman noted in his affidavit, he had no plausible basis to challenge these sentencing enhancements—and Marsh's pleadings provide none.[4]

Moreover, since Marsh collaterally attacks her sentence based upon errors that could have been, but were not, raised on direct appeal, she must demonstrate cause and prejudice resulting from the claimed error. Assuming Marsh can satisfy the cause prong with her ineffective assistance of counsel claim, she cannot demonstrate prejudice since the outcome of the sentencing process would have been the same. *Strickland*, 466 U.S. at 694.

The other segment of Marsh's claim of ineffective assistance of counsel during the sentencing process relates to the mechanics of applying fact-based enhancements under the U.S. Sentencing Guidelines. Relying on a misconstruction of *Alleyne v. United*

---

[4] The government is correct in emphasizing that issues involving guideline calculations are typically not cognizable in Section 2255 actions. *See United States v. Mikalajunas*, 186 F.3d 490, 495–96 (4th Cir. 1999).

*States*, ___ U.S. ___, 133 S. Ct. 2151 (2013), Marsh contends that the sentencing enhancements resulting from the intended losses, as well as her supervisory role in the conspiracy, involved factual issues that should have been presented to a jury for a determination under a reasonable doubt standard. *Alleyne* has no application to the facts at hand. In *Alleyne*, the Supreme Court held that "any fact that increases the mandatory minimum is an element that must be submitted to a jury." *Id.* at 2155 (internal quotation marks omitted). The court further explained that "[a]ny fact that, by law, increases the penalty for a crime is an element that must be submitted to the jury and found beyond a reasonable doubt." *Id.* (internal quotation marks omitted) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 483 n.10 (2000)). As the Fourth Circuit noted in the recent case of *United States v. Benn*, "[f]actual findings made for purposes of applying the [U.S. Sentencing] Guidelines, which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in *Alleyne*." 572 F. App'x 167, 2014 WL 2109806 at *11 (4th Cir. May 21, 2014) (quoting *United States v. Ramírez-Negrón*, 751 F.3d 42, 48 (1st Cir. 2014)). Assuming *arguendo* that *Alleyne* has retroactive application to the judgment in Marsh's case, the claim has no merit and will be dismissed.[5]

---

[5] Even if the rule announced in *Alleyne* applied to Marsh's case, it is doubtful that it would be retroactive. Rules governing the sentencing process are ordinarily considered to be procedural, as opposed to substantive, and therefore have no application to cases which become final before the new rules are announced. *See United States v. Mathur*, 685 F.3d 396, 399 (4th Cir. 2012); *see also Teague v. Lane*, 489 U.S. 288, 310 (1989). Moreover, none of the recognized exceptions to this limitation on retroactivity apply in the immediate case. *Saffle v. Parks*, 494 U.S. 484, 494–95 (1990); *Penry v. Lynaugh*, 492 U.S. 302, 329–30 (1989).

Finally, Marsh targets the representation provided by appellate counsel. In Marsh's view, "[a]ppellate counsel was ineffective under the Sixth Amendment depriving [her] of a fair and meaningful appellate review." (Marsh Mem. Supp. § 2255 Motion at 18.) Marsh encapsulates her claim in her supporting memorandum:

> [Her] appellate counsel, David B. Hargett . . . wrote [her] a letter claiming that in his opinion that it is "pointless" to file an appeal raising claims that have no chance of success. He gave her three (3) options regarding her pending appeal: (1) file the appeal; (2) an Ander's Brief; or (3) withdraw the appeal.

(*Id.* at 18.) Marsh opted for the latter option and withdrew her appeal. (*Id.*)

This Court's review of the record confirms appellate counsel's assessment. Although Marsh contends that appellate counsel should have pursued the sentencing issues addressed *ante*, the likelihood of success on review for plain error is remote. Based on the trial record, none of the issues raised by Marsh warranted serious debate.

The Supreme Court has consistently counseled appellate advocates to mine the record and "select[] the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). While counsel has a duty to support his client's appeal to the best of his ability, he must exercise reasonable judgment in determining which issues to pursue. *Id.* at 753–54. His duty, however, does not extend to the filing of frivolous claims. *Anders v. California*, 386 U.S. 738, 744 (1967). Appellate counsel in this case appropriately exercised reasonable discretion in recommending that his client abandon her appeal.

Based on the foregoing analysis, this Court will conduct an evidentiary hearing limited to whether trial counsel provided ineffective assistance of counsel in the plea

12

bargaining process in violation of Marsh's Sixth Amendment rights. Marsh's motion for relief under 28 U.S.C. § 2255 will be denied in all other respects.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Jan. 9, 2015
Richmond, Virginia

13